## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RYAN POULLARD,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | **Civil Action No. 07-836 (JDB)** |
| ) | |
| **FEDERAL BUREAU OF PRISONS,** ) | |
| ) | |
| **Defendant.** ) | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
## TO AMEND/SUPPLEMENT

## BACKGROUND

*Pro se* plaintiff, Ryan Edward Poullard, register number 06429-078, was sentenced in the

United States District Court for the Eastern District of Texas on February 4, 1998, to a 188-

month term of imprisonment with a five year term of supervised release to follow for Possession

with Intent to Distribute Cocaine Base, a violation of 21 U.S.C. § 841 (a) (1). See SENTRY

Public Information Inmate Data. Plaintiff is currently incarcerated at the Federal Correction

Complex-Low Security Institution in Beaumont, Texas ("FCI Beaumont"). Id. His projected

release date is December 8, 2010. Id.

On July 19, 2006, BOP staff at FCI Beaumont were conducting unit rounds. Compl. at

Ex. E (Docket Entry 1). Upon review of the plaintiff's cell, BOP staff found several stacks of

books and what appeared to be personal papers. Id. After confirming with the plaintiff that these

materials belonged to him, BOP staff directed the plaintiff to clean his area and move the

materials to storage. Id. BOP staff reminded the plaintiff that he shared his cell with two other

individuals and explained that it was getting too crowded in the cell. Id.

Plaintiff refused to comply with the directive and claimed that he needed an extra locker so that he could keep the materials in his cell. Compl. at Ex. E. BOP staff then opened plaintiff's locker and found several spoiled and malodorous food items. Id. Plaintiff was again directed to move his books and papers to storage and to remove the spoiled food. Id. When he refused to do so, he was then escorted to the Special Housing Unit (SHU)[1] and an incident report was filed. Id. Upon taking inventory of plaintiff's property, BOP staff determined that some of the books and papers in plaintiff's cell belonged to other inmates and to the FCI Beaumont chaplain. Id. Plaintiff was later charged and disciplined for misconduct related to possession of an unauthorized item and being unsanitary. Compl. at Ex N.

On or around May 7, 2007, plaintiff filed a complaint pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) (hereinafter "Bivens") and named as a defendant only the BOP. See Compl. at ¶¶ 1, 5, 21. Plaintiff claimed that the BOP violated his constitutional due process rights when it disciplined him for the misconduct related to the July 19, 2006 incident. Compl. at ¶¶ 7-17, Ex. C. As relief, plaintiff requested monetary damages in the amount of twenty-two million dollars. See Compl. at ¶ 24.

On July 17, 2007, defendant filed a motion to dismiss. Docket Entry 7. Defendant argued that sovereign immunity barred plaintiff's claim for monetary damages against the BOP, that venue was improper, and that plaintiff failed to state any constitutional claims, including First Amendment, Fifth Amendment, and Equal Protection claims.

On or around August 8, 2007, instead of filing an opposition, plaintiff moved to file a

---

[1]The Special Housing Unit is a separate unit for inmates who are unable to function in a less restrictive environment without being a threat to others or to the orderly operation of the institution. BOP Program Statement, 5212.07, Control Unit Programs, February 20, 2001.

supplemental pleading pursuant to Fed. R. Civ. P. 15(d).  <u>See</u> Docket Entry 10.  In his motion, plaintiff acknowledged that his original complaint was "defective in its statement of a claim for relief" and averred that the "supplemental pleading has corrected these errors."[2]  Pl. Mot. for Supp. Pl. at 4.  In reviewing the supplemental pleading, plaintiff appears to drop his <u>Bivens</u> claims and his corresponding request for monetary damages.  Instead, plaintiff now indicates that he brings this action pursuant to the Administrative Procedure Act,  5 U.S.C. § 702. *et seq.*, and apparently, the Religious Freedom Restoration Act ("RFRA"), and seeks injunctive and declaratory relief only, including but not limited to, the removal of the July 19, 2006 incident from his disciplinary record, the provision of an outdoor worship area, and other religious accommodations.  Supp. Pl. at 6-7.  Related to these requests, plaintiff appears to raise for the first time a claim related to the "provision of all materials and accommodations necessary for the practice of his sincerely held religious beliefs..."  Supp. Pl. at 1.

Plaintiff's motion to amend/supplement should be denied as futile because plaintiff's amended complaint, like his original complaint, cannot survive a motion to dismiss.  <u>James Madison Ltd. v. Ludwig</u>, 82 F.3d 1085, 1099 (D.C. Cir. 1996) (denial of leave to amend based on futility is warranted if the proposed claim would not survive a motion to dismiss).  Alternatively, should the plaintiff's amended complaint survive the government's dispositive motion, defendant submits that this amended complaint should be transferred to the Eastern District of Texas.

---

[2]It appears that Plaintiff actually intended to amend his complaint.  For purposes of this pleading, defendant will treat the plaintiff's motion as a motion to amend/supplement and may refer to plaintiff's "supplemental pleading" as an "amended complaint."

**DISCUSSION**

I.      **Count One – Disciplinary Proceedings Stemming From July 19, 2006 Incident**

As with his original complaint, the majority of plaintiff's amended complaint revolves

around allegations that the BOP violated his constitutional rights when it disciplined him for a

July 19, 2006 incident. Supp. Pl. at ¶¶ 9-19. Plaintiff claims that his discipline was "malicious

and unlawful" and accuses the BOP of falsifying incident reports and discriminating against him

because of his religion. Id. Plaintiff alleges that the BOP's conduct violates the First

Amendment and the Equal Protection clause.[3] Supp. Pl. at ¶ 8. As discussed below, this Court

lacks subject matter jurisdiction over plaintiff's APA claim. Moreover, even assuming that this

Court had jurisdiction, plaintiff fails to state any cognizable constitutional claims.

A.      **18 U.S.C. § 3625 precludes judicial review under the APA of plaintiff's claim regarding his disciplinary proceedings**

Under 5 U.S.C. §701(a), if a statute precludes judicial review, the agency action is

unreviewable under the APA. 5 U.S.C. §701(a). 18 U.S.C. § 3625 explicitly states that the APA

does not apply "to the making of any determination, decision, or order under this subchapter."

See also Anderson v. Federal Bureau of Prisons, 2007 WL 2701128, *1 (D.D.C. 2007). Federal

courts have held that § 3625 precludes judicial review of prison disciplinary proceedings. See

Clardy v. Levi, 545 F.2d 1241, 1244-46 (9th Cir.1976) (holding that the APA "is not applicable

---

[3]Plaintiff's original complaint appeared to raise a Fifth Amendment due process claim with regards to his disciplinary hearing and the handling of his subsequent administrative grievances. For example, plaintiff alleged that the BOP failed to observe his due process rights "during the discipline process" and failed to timely or otherwise appropriately respond to his grievances. Compl. at ¶¶ 18-20. Plaintiff makes no such allegations in his amended complaint however. To the extent that plaintiff does make such a claim, defendants incorporate by reference the arguments raised in its motion to dismiss. See Docket Entry 7 at 7-8.

to federal prison disciplinary proceedings"); Rodriguez v. Federal Correctional Institution in Oxford, 2002 WL 32364851 (W.D.Wis. 2002) (holding that § 3625 precludes judicial review of federal prisoner's due process and equal protection claims under the APA in connection with his disciplinary hearing involving the discovery of intoxicants in his cell).

In this case, plaintiff challenges the disciplinary hearing process stemming from the July 19, 2006 incident. However, such matters are not subject to judicial review under § 3625 and thus, this Court does not have subject matter jurisdiction under the APA to entertain this claim.

### B.    Plaintiff fails to state a cognizable First Amendment claim

It is well settled that several threshold requirements must be met before a particular belief, alleged to be religious in nature, is accorded First Amendment protection. Specifically, a court must decide whether the beliefs avowed are both: (1) sincerely held and (2) religious in nature. Levitan v. Ashcroft, 281 F.3d 1313, 1320 (D.C. Cir. 2002) (citing Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 531 (1993)). The challenged rule must also burden a central tenet or important practice of the litigant's religion. Id. If these threshold requirements are met, only then does the Court turn to an examination of the regulation in dispute.

Plaintiff's allegations of religious discrimination are vague and conclusory. Beyond general accusations of wrongdoing, plaintiff fails to explain how the BOP's decision to discipline him constitutes a First Amendment violation. He does not allege any sincerely held belief that is religious in nature and a central tenet of his religion. Moreover, even assuming that plaintiff could meet these threshold showings, he does not specifically identify any BOP regulations, policies, or conduct related to his discipline that restricts or otherwise prohibits the free exercise

of his religious beliefs.  Having failed to do so, plaintiff fails to state a First Amendment claim.

### C.    Plaintiff was not discriminated against on the basis of religion

The Equal Protection Clause demands that the government apply its laws in a rational and nonarbitrary manner.  See  Plyler v. Doe, 457 U.S. 202, 216 (1982);  Pryor-El v. Kelly, 892 F.Supp. 261(D.D.C. 1995).  However, "the conscious exercise of some selectivity in enforcement is not itself a federal constitutional violation."  Pryor-El, 892 F.Supp. at 270 (quoting Oyler v. Boles, 368 U.S. 448, 456 (1962).  For an equal protection claim to be validated in the prison context, an inmate who is not in a protected class must establish two necessary predicates.  First, the inmate must establish that he or she was treated differently than other prisoners in his or her circumstances.  Id. (citing Brandon v. District of Columbia Bd. of Parole, 823 F.2d 644, 650 (D.C.Cir. 1987).  Second, he or she must establish that such unequal treatment was the result of intentional or purposeful discrimination.  Id.

Again, plaintiff makes only conclusory claims that he was discriminated against on the basis of his religion.  Supp. Pl. at ¶¶ 7-8.  He fails to proffer any allegations that demonstrate that the BOP's treatment of his misconduct was handled any differently from any other similarly situated prisoners.  Moreover, even if he were able to show that the BOP treated him differently or that it committed any error or wrongdoing in handling his misconduct, plaintiff proffers no set of allegations that even raise an inference of intentional, religious discrimination.  See McCleskey v. Kemp, 481 U.S. 279, 297 (1987) (holding that a complaining party must show "*exceptionally clear proof*" that the government abused its discretion) (emphasis added).  Absent any showing at all, plaintiff's Equal Protection claim is without merit.

Even construing the plaintiff's constitutional claims under the liberal rules applicable to

*pro se* complaints, there still remains no arguable legal or factual basis upon which this amended complaint could go forward.  Plaintiff has failed to state a claim for violation of any constitutional rights with regards to the BOP's decision to discipline him.

## II.    Count Two – Denial of Religious Accommodations

Though not entirely clear, plaintiff appears to raise for the first time a claim under the Religious Freedom Restoration Act ("RFRA") that he was denied certain religious accommodations.  Supp. Pl. at ¶¶ 1, 20.  For example, in his preliminary statement, plaintiff states that his complaint is an "action challenging... the Bureau of Prisons' failure to handle inmate requests for religious accommodation consistent with the Religious Freedom of Restoration Act..."  Id. at ¶ 1.  He also states that the BOP "has failed to train, supervise, and promulgate policies requiring its employees to comply with RFRA."  Id. at ¶ 20.  This claim must be dismissed because plaintiff failed to exhaust his administrative remedies and because he fails to state a RFRA claim.

### A.    Plaintiff failed to exhaust his administrative remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The BOP's three-level administrative remedy procedure is set out at 28 C.F.R. § 542.10 *et seq*., and provides formal review of any complaint which relates to any aspect of the inmate's confinement.  Under this process, inmates are encouraged to first attempt resolution of their complaints informally by discussing the matter with a staff member at the facility at which he is housed.  If informal

resolution is insufficient to resolve the matter, the inmate may file a formal complaint with the

Warden within twenty days of the date on which the basis of the complaint occurred.  28 C.F.R. §

542.14.  If dissatisfied with the response from the Warden, the inmate may appeal his complaint

to the Regional Director.  28 C.F.R. § 542.15.  If dissatisfied with the Regional Director's

response, the inmate may appeal to the Director, National Inmate Appeals, in the Office of the

General Counsel in Washington D.C.  28 C.F.R. § 542.15.  An inmate has not exhausted his

remedies until he has sought review at all three levels.  28 C.F.R. § 542.15(a).

        In Booth v. Churner, 532 U.S. 731 (2001), the Supreme Court held that the PLRA

requires exhaustion of all administrative remedies, regardless of whether the administrative

process provides the particular relief sought by plaintiff.  The Prison Litigation Reform Act of

1995 provides that:

> No action shall be brought with respect to prison conditions under §1983 of this title, or
> any other federal law, by a prisoner confined in any jail, prison, or other correctional
> facility until such administrative remedies as are available are exhausted.

See also Gibbs v. Bolden, 151 F. Supp. 2d 854, 857 (E.D. Mich. 2001) (to exhaust administrative

remedies under the PLRA, prisoner must file grievance against the person he ultimately seeks to

sue).  This legislation was enacted to make the exhaustion provisions mandatory.  "Exhaustion is

now required for all action[s] . . . brought with respect to prison conditions, whether under §

1983 or any other Federal law."  Porter v. Nussle, 534 U.S. 516 (2002) (internal quotations and

citations omitted).  The exhaustion doctrine "enables the agency to develop a factual record, to

apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and

is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy."

Christopher W. v. Portsmouth Sch. Comm., 877 F.2d 1089, 1094 (1st Cir. 1989) (citing McKart

v. United States, 395 U.S. 185, 194 (1969)).

Thus, if a prisoner fails to exhaust available administrative remedies, his civil action must be dismissed. Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999). See e.g., United States v. Flanagan, 868 F.2d 1544, 1546-47 (11th Cir. 1989) (prisoner's claim that his pre-sentence custody should have been credited against his sentence was not properly before the court because prisoner failed to exhaust administrative remedies available through federal prison system before seeking judicial review). Even where there is partial exhaustion, dismissal of a case is appropriate. In Booth, 532 U.S. at 741, the inmate plaintiff exhausted his grievance at the first level, but failed to complete all three levels of the grievance process. The Supreme Court upheld the district court's dismissal of the case for failure to exhaust administrative remedies. See also Jackson v. District of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001) ("[T]he statute means what it plainly says," the district court held; "prisoners may only file actions under federal law concerning their conditions of confinement after they have exhausted their prison's administrative remedies.").

Recently, in Woodford v. Ngo, 2006 WL 1698937, 126 S.Ct. 2378, 2382 (2006)), the Supreme Court reemphasized the importance of the administrative exhaustion requirement. See Bradley v. Washington, 441 F.Supp.97 (2006) ("This [administrative exhaustion] requirement, as recently emphasized by the Supreme Court in Woodford, is a stringent one). In Woodford, the Supreme Court interpreted this requirement to mandate what it referred to as "proper exhaustion." Id. at *7. Specifically, the Court held that such "proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules...." Id. at *5. The Court emphasized that this "means using all steps that the agency holds out, and doing so

9

*properly* (so that the agency addresses the issues on the merits)." Id. (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). See also Gordon v. Lappin, 2006 WL 2228932 (2006) (relying upon Woodford in dismissing complaint for failure to exhaust where Court found that plaintiff did not properly pursue informal resolution step of the administrative grievance process).

Plaintiff claims, erroneously, that he has "exhausted all available administrative remedies pertinent to the provision of all materials and accommodations necessary for the practice of his sincerely held religious beliefs" and cites administrative grievance numbers 354786-F1, 354786-R1, 354786-A1, and 355510-F1. Supp. Pld. at ¶ 4. However, as demonstrated in the attached declaration of James Schluter, a BOP administrative remedy specialist, plaintiff failed to properly exhaust his administrative remedies. See Exhibit 1, James Schluter Declaration.

In this case, plaintiff filed a formal administrative grievance with the Warden (grievance number 354786-F1) on or about October 13, 2004. Id. at ¶5-6. The BOP rejected plaintiff's grievance and returned it to him, explaining that he failed to sign the form with his correct, committed name. Id. at ¶ 6; see 28 C.F.R. § 542.14(c)(3) and (4) (BOP regulations provide that the inmate "shall complete the form with all requested identifying information" and "shall date and sign the Request."). Instead of resubmitting the appeal to the warden with his correct signed name, plaintiff then submitted a regional administrative grievance (grievance number 354786-R1). Id. The BOP again rejected plaintiff's administrative grievance, explaining that he failed to correct the deficiency noted in his prior grievance and that he also failed to resubmit the remedy to the Warden in a timely manner. Id. See 28 C.F.R. § 542.15(b)(3) (BOP regulations provide that at the regional level the inmate "shall complete the appropriate form with all requested

10

identifying information" and "shall date and sign the Appeal."). On or about February 22, 2005,
plaintiff then submitted an appeal to the General Counsel (grievance number 354786-A1). Id.
The General Counsel's office again rejected this appeal, noting concurrence with the rejection of
the regional appeal. Id. Thus, because plaintiff failed to submit his administrative grievances in
accordance with the procedural requirements, the BOP properly determined that he failed to
exhaust his administrative remedies.[4] Id.

      The current case is the precise type of situation in which requiring exhaustion is justified.
As discussed more fully below, plaintiff's RFRA allegations are confusing and difficult to
discern. Proper exhaustion would have permitted plaintiff to fully articulate his complaint, as
well as allow the BOP the opportunity to appropriately respond and address any concerns
regarding conditions of confinement, without prematurely requiring court involvement. In failing
to observe the BOP's procedural requirements regarding the administrative grievance procedures,
plaintiff has clearly circumvented the intent and the requirements of the PLRA by not fully
exhausting his administrative remedies before seeking injunctive relief. He should not be
rewarded for doing so by reaching the merits of his complaint.

      To allow inmates to proceed to litigation without requiring total exhaustion encourages
them to do so, and suggests to them that, at best the Bureau of Prisons, through its Wardens,

---

     [4]Plaintiff also claims that he has exhausted his administrative remedies with regards to
administrative grievance number 355510-F1. Supp. Pld. at ¶ 4. This administrative grievance
was submitted to the Warden on or about October 20, 2004 and was again rejected because
plaintiff failed to sign the form with his committed name. Ex. 1 at ¶ 7. BOP's SENTRY
database indicates that plaintiff did not attempt to resubmit this appeal in proper form, nor did he
appeal this matter to the Regional Director to the General Counsel. Id. Thus, to the extent that
plaintiff attempts to raise in this civil action any issues that he raised in grievance number
355510-F1, plaintiff is precluded from doing so because he also failed to exhaust his
administrative remedies regarding this matter. Id.

Regional Directors and Central Office, will not take such allegations seriously or appropriately

address inmates' needs, and at worst that these government officials would actually condone such

behavior. Neither case exists. To permit plaintiff to proceed will encourage him and other

inmates to attempt to circumvent the PLRA's mandatory exhaustion requirement by simply

raising similar allegations and asking for immediate injunctive relief. No such exception to the

PLRA exists and the court should dismiss this action.

      **B.**     **Plaintiff fails to state a cognizable RFRA claim**

On November 16, 1993, Congress enacted RFRA, which reads as follows:

(a) In general

Government shall not substantially burden a person's exercise of religion even if the
burden results from a rule of general applicability, except as provided in subsection (b) of
this section.

(b) Exception

Government may substantially burden a person's exercise of religion only if it
demonstrates that application of the burden to the person –

      (1) is in furtherance of a compelling governmental interest; and
      (2) is the least restrictive means of furthering that compelling governmental interest.

(c) Judicial relief

A person whose religious exercise has been burdened in violation of this section may
assert that violation as a claim or defense in a judicial proceeding and obtain appropriate
relief against a government. Standing to assert a claim or defense under this section shall
be governed by the general rules of standing under article III of the Constitution.

Religious Freedom and Restoration Act of 1993, 42 U.S.C.A. § 2000bb. The RFRA was

Congress' way of returning to the compelling governmental interest First Amendment analysis

abrogated in Employment Division, Department of Human Resources of Oregon v. Smith, 494

U.S. 872 (1990). The RFRA statute does not provide definitions of its key terms "substantial burden," "compelling governmental interest," and/or "least restrictive means." See id. The Legislative Committee encouraged Courts to look at cases prior to the Smith case for guidance with respect to those definitions. See S. Rep. 103-111. Though inmates are allowed to bring claims under RFRA, its legislative history shows that Congress intended through the enactment of this statute for courts to accord prison administrators due deference.[5]

Under RFRA, the government cannot substantially burden a person's exercise of religion. "Inadequately formulated prison regulations and policies grounded on mere speculation, exaggerated fears, or post-hoc rationalizations will not suffice to meet the [A]ct's requirements." S. Rep. No. 103-111. In order to state a claim under RFRA, a plaintiff must allege facts demonstrating that a sincerely held religious belief has been substantially burdened by the government policies. Henderson v. Kennedy, 253 F.3d 12 (D.C. Cir. 2001). To show a substantial burden, "[t]he interference must be more than an inconvenience; the burden must be *substantial* and an interference with a tenet or belief to religious doctrine." Graham v. Commissioner of Internal Revenue Service, 822 F.2d 844, 850-51 (9th Cir. 1987), *aff'd sub nom*, Hernandez, supra. "A substantial burden constitutes 'putting substantial pressure on an adherent

---

[5] In so doing, the Committee explained:

> The Committee does not intend to act to impose a standard that would exacerbate the difficult and complex challenges of operating the Nation's prisons and jails in a safe and secure manner. Accordingly, the committee expects that the courts will continue the tradition of giving due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.

S. Rep. 103-111, 1993 U.S.C.C.A.N. 1892, 1899-1900 (July 27, 2993) (footnote omitted).

to modify his behavior and to violate his beliefs.'" Cockrell-El v. District of Columbia, 937 F.Supp. 18 (D.D.C., 1996) (quoting Hobbie v. Unemployment Appeals Comm'n of Fla., 480 U.S. 136, 141, 107 S.Ct. 1046, 1049, 94 L.Ed.2d 190 (1987)).  "A substantial burden does not arise merely because 'the government refuses to conduct its own affairs in ways that comport with the religious beliefs of particular citizens.'" Alliance for Bio-Integrity v. Shalala, 116 F.Supp.2d 166 (D.D.C., 2000)(quoting Bowen v. Roy, 476 U.S. 693, 699, 106 S.Ct. 2147, 90 L.Ed.2d 735 (1986)).

　　　Once the Plaintiff has met the burden of showing a substantial burden on his sincerely held beliefs, the burden then shifts to the government to demonstrate that application of a burden to the person's religion is:  (1) in furtherance of a compelling government interest and (2) is the least restrictive means of furthering that compelling governmental interest.  42 U.S.C. § 2000bb-1(a), (b).

　　　In support of his RFRA claim, plaintiff alleges that the BOP has improperly referred to his "Ifa" religion by different names, including "Yoruba/Santeria, General Yoruban Program, Yourba/Ifa, and Yoruba" in various prison documents (e.g. prison chapel schedules, faith group lockers, etc.).  Supp. Pl. at ¶ 7-8.  Plaintiff claims that this "'renaming' and 'forced grouping'" of his religion into categories that are already established within the prison constitutes a violation of the RFRA.  Id.  Plaintiff also claims, without any elaboration, that the BOP has failed to provide him with "all the materials and accommodations needed for the practice of [his] sincerely held religious beliefs."  Id.

　　　Plaintiff's allegations are sparse, at best, and fail to set forth the necessary information to allow BOP to make an informed response to his claim.  For example, plaintiff fails to explain

how the BOP's alleged references to his Ifa religion by other names constitutes a substantial

burden upon his sincerely held religious beliefs.[6]  Regarding his claim that he has been denied

religious accommodations, plaintiff does not identify the accommodations that were allegedly

denied, nor does he explain how the failure to provide any such accommodations constitutes a

substantial burden upon any sincerely held religious beliefs.  See Supp. Pld. at 7-8, 20.  He does

not even allege or identify any BOP rules, policies, or conduct that forced him to modify his

behavior or to violate any of his religious beliefs.  Plaintiff has done nothing other than make

conclusory allegations that the BOP violated RFRA by denying him certain religious

accommodations, yet he makes no attempt to set forth any specific, factual allegations in support

of his claim.[7]  Absent any such allegations, plaintiff has failed to state a RFRA claim and has

effectively precluded defendants from being able to fashion a response to his RFRA allegations.

## III.    Transfer to the Eastern District of Texas is Appropriate

If the Court does not dismiss this matter for lack of jurisdiction or failure to state a claim,

it should be transferred to Texas, pursuant to 28 U.S.C. § 1404(a), for the convenience of the

parties and witnesses and in the interest of justice.  See Starnes v. McGuire, 512 F.2d 918, 927-

31 (D.C. Cir. 1974) (in assessing whether transfer is appropriate in prisoner cases, the court

---

[6]It bears emphasizing that plaintiff's religion, Ifaism, is oftentimes referred to as Yoruba or some facsimile of this name.  See, e.g. http://www.cultural-expressions.com/ifa/ifaism.htm; http://www.neworleansmistic.com/spells/primer/ifa.htm.

[7]Even an examination of the voluminous documents attached to plaintifff's amended complaint offers little insight into the precise countours of his RFRA claim.  In his first administrative grievance (case number 354786-F1), plaintiff alleges only that BOP guards made insensitive remarks about some of his religious food offerings, delayed providing him with certain religious materials, and questioned him about a religious shrine set up in his foot locker.  Even assuming as true these allegations, it is unclear how such matters constitute a substantial burden upon any sincerely held religious beliefs.

should consider such factors as the difficulty in communicating with counsel, difficulty in transferring the prisoner, the availability of witnesses and files and speed of final resolution).

28 U.S.C. § 1391(e), which covers the venue provision for lawsuits against employees of the United States acting in their official capacities or any agency of the United States, provides that venue is proper in one of these three districts:  (1) where a defendant in the action resides; (2) where a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) where the plaintiff resides if no real property is involved in the action.

Even if venue is technically appropriate, the Court of Appeals has recognized that "there is certainly no reason why all cases involving the construction or constitutionality of a federal statute should be litigated in the District of Columbia." Starnes v. McGuire, 512 F.2d 918, 925 (D.C. Cir. 1974) (en banc).  Rather, where the records, witnesses, and counsel for the case are located near the prison and there is no issue of national importance raised by the complaint, "transfer of the complaint to the district of the plaintiff's incarceration is indicated." Id. at 933; see also Lincoln v. Bureau of Prisons, Civ. No. 96-2325, at 2 (D.D.C. May 2, 1997) ("[t]his Circuit discourages 'carpetbagging' by prisoners who are incarcerated elsewhere.").  Thus, even if venue were otherwise proper, the District Court for the District of Columbia court would also look at the convenience of the parties.  Title 28 U.S.C. §1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought.

The D.C. Circuit in Starnes set out a number of factors for a district court to use in deciding whether to transfer a civil case brought by a prisoner incarcerated outside the District of

Columbia.  <u>Starnes v. McGuire</u>, 512 F.2d 918 (D.C. Cir. 1974).  Those factors are: (1) the prisoner's difficulty of communication with counsel; (2) the difficulty of transferring the prisoner; (3) the availability of witnesses and files; (4) the speed of final resolution; and (5) whether the case involves issues of national policy that require the testimony of high-level administrators located in Washington, D.C.  <u>Id</u>. at 929-33.

These factors strongly support the appropriateness of transferring this case to the appropriate venue in Texas.  Plaintiff challenges actions taken by prison officials in Beaumont, Texas and allegedly causing injury to plaintiff in the state of Texas.  His inmate records are also located in Texas.  Because plaintiff is *pro se*, there are no issues related to communication with counsel.  Finally, it does not appear that this complaint involves any issues of national policy that would require the testimony of any high-level BOP offices located in Washington, D.C.  In fact, even were any such policies implicated, the staff at FCI Beaumont who made the challenged decisions could testify about it in light of any such policy.

Thus, in the event that plaintiff's amended complaint is able to survive the motion to dismiss in whole or in part, defendant submits that this complaint should be transferred to the United States District Court in the Eastern District of Texas.

**CONCLUSION**

For all of the foregoing reasons, the plaintiff's motion to amend/supplement his complaint should be denied as futile.  In the alternative, the case should be transferred to the United States District Court for the Eastern District of Texas.

17

Respectfully submitted,

____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

____/s/_____
QUAN K. LUONG
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)

18

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on this 24th day of September, 2007, I caused service of the foregoing **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO AMEND/SUPPLEMENT** to be made on the *pro se* plaintiff via first class mail:

> Ryan Poullard
> FCI Beaumont
> Reg. No. 06429-078
> P.O. Box 26020
> Beaumont, TX 77720-6020

Respectfully submitted,

_____/s/_____
QUAN K. LUONG
Special Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Ryan Poullard, | ) | |
|           Plaintiff, | ) | |
| | ) | |
|    v. | ) | Civil Action No.  07-836 (JDB) |
| | ) | |
| Federal Bureau of Prisons, | ) | |
|           Defendant. | ) | |

## DECLARATION OF JAMES SCHLUTER

I, James Schluter, hereby declare and state the following:

1.     I am currently employed by the Federal Bureau of Prisons (BOP) as an Administrative Remedy Specialist at the Office of General Counsel.  I have held my position since April 4, 2004.

2.     As Administrative Remedy Specialist, I have access to the BOP database known as SENTRY.  All administrative remedy requests and appeals filed by Bureau of Prisons' inmates are logged and maintained in SENTRY.

3.     The administrative remedy process commences with the inmate informally presenting a complaint to a staff member at the facility where he or she is housed.  See 28 C.F.R. § 542.13(a).  If this attempt at informal resolution is not successful, the inmate may file a formal written complaint with the Warden.  See 28 C.F.R. § 542.14(a).  If dissatisfied with the Warden's response, the inmate may appeal to the Regional Director.  See 28 C.F.R. § 542.15. If unsatisfied with the Regional Director's response, the inmate may appeal to the General Counsel.  See 28 C.F.R. § 542.15.  The appeal to the General Counsel is the final administrative appeal provided by the Bureau of Prisons.  An inmate has not fully exhausted his administrative remedies until he has appealed through all appropriate levels.  Once the inmate has properly filed at and receives a response from each level, the inmate is considered to have exhausted the available administrative remedies. See Irwin v. Hawk, 40 F.3d 347, 349 n.2 (11th Cir. 1994), cert. denied, 516 U.S. 835, 116 S.Ct. 112 (1995).

4.     I have reviewed the administrative remedy requests filed by the Plaintiff Ryan Poullard, Register Number 06429-078, who is currently housed at the Federal Correctional Institution (Low Security) in Beaumont, Texas.

5.     Plaintiff contends he "has exhausted all available administrative remedies pertinent to the provision of all materials and accommodations necessary for the practice of his sincerely held religious beliefs" and references administrative remedy numbers 354786-F1, 354786-R1, 354786-A1 and 355510-F1.  Review of SENTRY reveals Plaintiff has not exhausted these administrative remedies.

6.    Remedy numbers 354786-F1, 354786-R1 and 354786-A1 represent the same case submitted at the three levels outlined in paragraph three (Warden, Regional Director and General Counsel). In this case, Plaintiff requests to change his religion to IFA. SENTRY indicates remedy number 354786-F1 was submitted on October 13, 2004, and was rejected by the Warden because Plaintiff failed to sign the form with his committed name. Plaintiff submitted Regional Appeal 354786-R1 on January 10, 2005. This submission was rejected because Plaintiff failed to correct the deficiency noted by the Warden and did not resubmit the remedy to the Warden in a timely manner. Plaintiff submitted Central Office Appeal 354786-A1 on February 22, 2005. This submission was rejected by the Central Office, noting concurrence with the rejection of the Regional Appeal. Because these administrative remedies were not properly submitted, Plaintiff has not exhausted his available administrative remedies regarding the issue presented therein.

7.    SENTRY indicates remedy number 355510-F1, regarding material and accommodation of IFA, was submitted on October 20, 2004, and was rejected by the Warden because Plaintiff failed to sign the form with his committed name. There is no indication Plaintiff attempted to appeal this matter to the Regional Director or General Counsel, or that he attempted to resubmit this to the Warden in proper form. Accordingly, since this administrative remedy was not properly submitted to the Warden and not appealed to either the Regional Director or General Counsel, Plaintiff has not exhausted available administrative remedies regarding provision of materials and accommodation of the practice of his religious beliefs.

I declare the foregoing is true and correct to the best of my knowledge and belief, and given under penalty of perjury pursuant to 28 U.S.C. § 1746.

Executed this 20th day of September 2007 in Washington, D.C.


James Schluter
Administrative Remedy Specialist
Federal Bureau of Prisons